**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:13-cv-1359

RALLY SOFTWARE DEVELOPMENT CORP.,

      Plaintiff,

v.

SAMPO IP, LLC, a Virginia limited liability company,

      Defendant.

**RALLY'S OPPOSITION TO SAMPO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

**I.     INTRODUCTION**

This Court has personal jurisdiction over Sampo IP, LLC for three reasons.

**First**, "[certain] patent enforcement actions, taken in conjunction with the issuance of cease-and-desist letters, are sufficient to support specific jurisdiction over a patentee in a foreign forum."  *Radio Sys. v. Accession*, 638 F.3d 785, 789 (Fed. Cir. 2011).  This condition is easily met here, where Sampo not only contacted Rally in Colorado about Sampo's infringement allegations and intent to litigate, but also took the additional enforcement actions of (1) suing five of Rally's customers; and (2) making threats to Rally in Colorado that Sampo would sue additional customers and/or Rally if Rally did not take a license for itself and its customers.  Venue is proper in Colorado for the same reasons.

**Second**, Sampo is merely a shell company, and Sampo's parent company has sufficient contacts with Colorado to create general jurisdiction over both companies.  The parent—Marathon Patent Group—was until recently called American Strategic

Minerals Corporation ("ASMC"), and ASMC was incorporated and headquartered in Colorado. Federal Circuit law imputes these contacts and the resulting jurisdiction to the subsidiary Sampo. *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998). This is especially so here, where Sampo is effectively an alter-ego of MPG, sharing the same offices, executives, patents, and business plan.

**Third**, personal jurisdiction over Sampo is reasonable and fair in this case, where jurisdiction is perfectly aligned with policy considerations for non-practicing entities ("NPEs") like Sampo. Both the Executive Branch and the Judiciary have expressed outrage over abusive "troll" patent litigation by NPEs. Recent Executive Actions and commentary from the Chief Judge of the Federal Circuit urge courts to protect American business against abusive tactics used by NPEs in litigation. (*See* Exs. 1,[1] 2.) Two such tactics are on display in this action—(1) the use of shell companies by NPEs; and (2) suing downstream users of technology instead of the real party in interest—the technology developer (here, Rally). These inappropriate tactics justify Rally's intervention to stop Sampo from harassing its customers. Furthermore, public policy dictates that Rally should be allowed to defend itself and its customers in the forum where its allegedly infringing software is designed, developed, and sold—and not be forced to acquiesce in Sampo's forum-shopping games by litigating this dispute in the Eastern District of Texas—a forum that has no contacts to Sampo or any of the five Rally customers that Sampo unjustifiedly sued there.

---

[1] References to "Ex." refer to exhibits to the attached Declaration of Orion Armon.

## II. FACTUAL BACKGROUND GIVING RISE TO RALLY'S DECLARATORY JUDGMENT ACTION AND PERSONAL JURISDICTION OVER SAMPO

### A. Sampo's Lawsuits Against Rally's Customers

Sampo filed patent infringement suits against 26 defendants in March to May 2013. All were filed in the District Court for the Eastern District of Texas. In each, Sampo sued the end-users of the allegedly-infringing systems instead of the systems' manufacturer. Five of these end-users rely on systems offered by Rally.

### B. Sampo's Threats Against Rally

On May 14, 2013, Orion Armon (counsel for Rally) spoke with Steven R. Pedersen, (counsel for Sampo) by phone to ask why Sampo sued Rally's customers and what Sampo hoped to gain from its lawsuit. (Armon Decl. at ¶ 4.) On May 16, Mr. Pedersen represented that Sampo's lawsuit against Rally's customers could be resolved if Rally would agree to purchase a patent license for itself and its customers. *Id*. Mr. Pederson also expressly threatened to sue additional customers and/or Rally if Rally didn't take a license. *Id*. The next day, Mr. Pederson provided Rally with a license demand of $750,000. *Id*. Rally filed its declaratory judgment ("DJ") complaint in this Court on May 24, 2013. (D.I. 1.) Sampo has not yet served process on any of Rally's customers. *Id*.

### C. The Parties

#### 1. Plaintiff Rally Software Development Corp.

Rally's principal place of business and headquarters are in Boulder, Colorado. Founded in 2001, Rally offers market-leading cloud computing-based solutions for managing Agile software development. As the developer and distributor of an accused

product, Rally has agreed to indemnify and defend its customers. Rally is the true defendant in the suit against its customers—needing to protect its customers and having the knowledge of its accused technology necessary to resolve this dispute.

### 2. Defendant Sampo IP, LLC

Defendant Sampo IP, LLC is a Virginia corporation with its principal place of business in Alexandria, Virginia. Sampo is a wholly-owned subsidiary of Marathon Patent Group, Inc. ("MPG"). (Ex. 7 at F-9.) Sampo and MPG share much more than just a parent-sub relationship. Sampo and MPG share a principal place of business at the same address and in the same office. (*Compare* Ex. 7 at 1 to Ex. 10 ¶ 1.) Doug Croxall acts as both Sampo's President and as MPG's CEO and Chairman. (D.I. 15-1; Ex. 3 at 4.) MPG treats Sampo's Asserted Patents as its own, listing the Asserted Patents on MPG's website as part of its patent portfolio. (*See* Ex. 4.) Like Sampo, MPG "partners with inventors and patent owners to monetize patent portfolios through IP licensing campaigns." (Ex. 6.) In other words, Sampo is a "patent troll," that, in the words of President Obama, "don't actually produce anything themselves," and instead develop a business model "to essentially leverage and hijack somebody else's idea and see if they can extort some money out of them." (Ex. 1.)

### 3. Sampo's parent company – Marathon Patent Group – was formerly ASMC, a Colorado corporation

MPG is currently a Nevada corporation with its principal place of business co-located with Sampo's in Virginia. (Ex. 7 at 1.) But prior to its recent renaming, MPG was another company—American Strategic Minerals Corp. ASMC was headquartered in, and incorporated under the laws of, the State of Colorado at least as early as April 30,

2011.  (*See* Ex. 7 at F-7.)  Only at the end of last year did ASMC switch from mining speculation to "the acquisition, development and monetization of intellectual property." (*Id.* at F-14)  Prior to January 26, 2012, MPG was "a shell company with no business operations." (*Id.* at F-7.)  On that date, ASMC acquired MPG through a stock exchange. Nine months later, the company received its current name: "Marathon Patent Group." (*Id.*)

ASMC has extensive contacts with Colorado.  Just last year, ASMC said that it was "based out of Nucla, Colorado – at the center of the Uravan Mineral Belt" and that ASMC "is engaged in fast-tracked uranium and vanadium mining projects on the Colorado Plateau." (Ex. 8.)  Colorado State records in 2011 list ASMC's principal place of business and registered agent as Nucla, Colorado. (Ex. 9.)  At the beginning of 2013, ASMC had claims to land within Colorado. (Ex. 7 at F-14.) ASMC owned or owns "mining leases…in the states of Utah and Colorado for the purpose of exploration and potential development of uranium and vanadium minerals."   (Ex. 7 at F-14.)   In November 2011, MPG/ASMC entered into mining lease agreements in Colorado with 20-year terms.  (Ex. 5 at 5.)

    **4.**    **Rally's customers**

Sampo's lawsuit in the Eastern District of Texas accuses five of Rally's customers (the "Customers") of patent infringement. (*See* Ex. 10.)  But although it was Sampo's burden to sufficiently allege personal jurisdiction, Sampo's Complaint does not allege a single connection between any of these Customers and the Eastern District. (*See id.* at ¶¶ 15-17.)  Sampo does not allege that any of the Customers are located in the Eastern District. (*Id.* at ¶¶ 3-7.)  Sampo does not allege that any Customer has

facilities or property there, nor maintains a principal place of business or a registered agent there. *Id.*  Nor does Sampo allege that any Customer conducts any business in the Eastern District, has employees there or has ever operated the accused Rally product there. *Id.*  The best Sampo could do was to allege contacts between the customers and jurisdictions *adjacent to* the Eastern District. (*See id.*)  Rally is unaware of any case holding that such allegations are sufficient for personal jurisdiction.

### III.     LEGAL STANDARD AND GOVERNING LAW

Federal Circuit law controls the issue of personal jurisdiction in this action. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008).  The plaintiff is only required to make a prima facie showing that the defendants are subject to personal jurisdiction. *Id.* at 1328-29.  In considering the issue, the Court construes all pleadings and affidavits in the light most favorable to the plaintiff and resolves any factual conflicts in the affidavits in the plaintiffs' favor. *Id.* at 1329.

A court has personal jurisdiction over a defendant where: (1) asserting jurisdiction over the defendant does not violate the defendant's due process, and (2) the governing long-arm statute permits the court to exercise jurisdiction over the defendant. *See Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269-70 (Fed. Cir. 1998).  Because Colorado's long-arm statute is coextensive with due process, this Court need only consider whether the exercise of jurisdiction comports with due process. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  Thus, Plaintiff must show that the defendant should be subjected to either (1) general personal jurisdiction or (2) specific personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

### A. Specific personal jurisdiction

To determine whether specific personal jurisdiction comports with due process in an action for declaratory judgment of non-infringement, the Court considers whether: (1) the defendant purposefully directed enforcement activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Avocent*, 552 F.3d at 1332. In applying this test, the Federal Circuit has observed that, "[w]here the patentee has engaged in sufficient additional conduct, beyond merely informing others of its patent rights and its intention to enforce those rights through litigation, we have held that the policy of *Red Wing Shoe*[2] does not afford the patentee protection against a declaratory judgment action brought in the foreign forum to which the patentee directed its actions." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885-86 (Fed. Cir. 2008).

On multiple occasions, the Federal Circuit has found specific personal jurisdiction where the declaratory judgment defendant engaged in "other activities." For example, in *Campbell Pet*, the Federal Circuit found jurisdiction over "a patentee whose 'extra-judicial patent enforcement,' namely, enlisting a third party to remove defendant's products from a trade show that was being held in the forum state, went beyond merely informing the defendant of its alleged infringement." *Avocent*, 552 F.3d at 1334. Also, in *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003), the Federal Circuit found that other forum state conduct by the defendant, such as visiting

---

[2] *Red Wing Shoe* held that "letters threatening suit for patent infringement sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction.'" *Avocent*, 552 F.3d at 1333 (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359-60 (Fed. Cir. 1998)) (original emphasis).

the plaintiff, hiring an attorney, and telephoning the plaintiff there on several occasions, were sufficient to justify personal jurisdiction over the plaintiff.

The relevant inquiry for specific jurisdiction is the activities' connection to the forum: "to what extent…the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Avocent*, 552 F.3d at 1332 (internal quotes and citations omitted).

### B. General personal jurisdiction

For general personal jurisdiction, a court "must explore the nature of [the defendant's] contacts with the [forum State] to determine whether they constitute…continuous and systematic general business contacts." *Helicopteros*, 466 U.S. at 415-16. Under this standard, corporations are subject to general personal jurisdiction at least in their state of incorporation and their principal place of business. *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2853-54 (2011) (identifying domicile, place of incorporation, and principal place of business as paradigm bases for the exercise of general jurisdiction)").

The time period over which general jurisdiction is analyzed includes a considerable period of time preceding the Complaint. "[D]istrict courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed" in order to determine whether the defendant's contacts meet the requirements for general jurisdiction. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d. Cir. 1996) (internal quotation marks omitted). Although the *Metropolitan Life Insurance* Court did not

provide a specific period of time over which contacts should be analyzed, it is clearly greater than one year. *See id.* at 565-69 (reversing district court's decision to use a one-year analysis period where the plaintiff had suggested six years).

IV.  **ARGUMENT**

   A.  **Sampo's Actions Exceed the Federal Circuit's Requirements for Specific Personal Jurisdiction in Colorado**

   1.  **Sampo's other "enforcement activities" go beyond a mere threat letter**

Sampo agrees that the "Federal Circuit holds that 'the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there.'"  (Br. at 2 (citing *Avocent*, 552 F.3d at 1334).)  However, Sampo's opening brief omits the fact that it has gone far beyond that threshold.

Instead of offering a license using a "pay up, or we'll shoot" threat, Sampo shot *first* at Rally's customers with its Texas lawsuit and *then* asked Rally to pay up. Sampo's lawsuit against five of Rally's customers for patent infringement easily meets the requirement of "other activities" that "relate to the enforcement" of the patent and warrants personal jurisdiction. *See, e.g.*, *Radio Sys.*, 638 F.3d at 789.  In addition, Sampo directed this act at Rally in Colorado: the clear effect of the lawsuits was to injure Rally's Colorado-based business by dissuading people from buying and using Rally's products.  Confirming this, Sampo admitted that its alleged basis for the suit was not specific to the Texas customers, but was instead directed solely at the use of Rally's products. (Armon Decl. at ¶ 13.)

Sampo's next enforcement action unquestionably took place in Colorado: demanding $750,000 with a "pay up or we'll shoot more customers and maybe you too" threat. Specifically, after suing Rally's customers in Texas, Sampo had its lawyers contact Rally's counsel in Colorado with a threat that if Rally did not take a license covering Rally and its customers, Sampo would sue more of Rally's customers. This also confirms that Sampo's lawsuit against the customers in Texas was expressly aimed and "purposefully directed" at Rally in Colorado. After all, Sampo filed its suits in Texas to force *Rally*—not its customers—to take a license. Sampo's threat is also the type of third-party enforcement within Colorado that supported personal jurisdiction in cases such as *Campbell Pet. Co. See Avocent*, 552 F.3d at 1334.

Even without the customer suit, Sampo's "offer" to Rally should be seen for what it is—an overt enforcement action that qualifies under *Avocent* as "other activity" justifying jurisdiction. This is because an entity's status as an NPE lends special enforcement significance to its licensing offers. *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 (Fed. Cir. 2009) (given the "add[ed] significance" for NPEs, it was reasonable to interpret Acceleron's refusal to refrain from suit as intent to enforce its patent). Similarly, Sampo's NPE status warrants viewing its license offer to Rally with added significance as judicial "patent enforcement within the forum" that warrants personal jurisdiction in Colorado. *See Elec. Solutions, Inc. v. Mechoshade Sys.*, No. 10–cv–02750–WDM–MJW, 2011 WL 1756222, *3 n.3 (D. Colo. May 9, 2011).

**2.     Sampo directed its enforcement actions at Rally in Colorado**

Even considered on its own, Sampo's lawsuit against Rally's customers in Texas is sufficiently directed at Colorado to warrant personal jurisdiction. This is because

Colorado "is the focal point both of the story and of the harm suffered." *See Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1204 (finding DJ jurisdiction on tortious interference grounds). In *Silent Drive,* the DJ defendant sued in Texas to enjoin a technology partner of Iowa-based DJ plaintiff Silent Drive. *Id.* at 1204-05. Because the injunction would have dissuaded customers from buying Silent Drive's products, the defendant's Texas lawsuit was "expressly aimed at Iowa" and the defendants knew that the "brunt of the harm" would have been suffered there. *See id.* at 1204-1205.

### B. Policy Considerations Support Personal Jurisdiction over Sampo

#### 1. Sampo deserves no credit for filing its inappropriate suit against customers in Texas

To give credit to Sampo for forum-shopping its suit in Texas would be to reward it for the type of "abusive litigation" that the Chief Judge of the Federal Circuit said "patent trolls" should be forced to pay for. (Ex. 2.) One such abuse is when a patent holder sues numerous "users of a technology (who know little about the patent) rather than those who make it." *Id.* Sampo has done exactly that, suing dozens of end-users and none of the technology makers. *See* § II.A , above. Another abuse the Chief Judge warned of is "when a patent holder sues a slew of companies with a demand for a quick settlement at a fraction of the cost of defense"—just as Sampo has also done with its demand for $750,000 before the Texas suits have even been served. Moreover, Sampo sued the Customers in the Eastern District of Texas—a forum with which none of the Customers are alleged to have any connection, but whose *in-terrorem* effect as an NPE-friendly venue is well known. This is exactly the type of "bullying" the Chief Judge asked the courts to curtail. (Ex. 2.)

The White House voiced similar concerns in its recent Executive Actions and Legislative Recommendations. (Ex. 1.) One recommendation is to protect "off-the-shelf" use of technology by end-user businesses by halting judicial proceedings against such end-users when a suit involving the manufacturer of the technology has also been instituted, as Rally has done in this case. *Id.* A second recommendation is to dissuade defendants' use of "shell companies to hide their activities and enable their abusive litigation and extraction of settlements." *Id.* As discussed below, Sampo is also using this ploy to attempt to avoid the jurisdiction of this Court, and should not be rewarded for it. *Id.*

### C.     Sampo Cites No Relevant Precedent in Support of its Motion

Sampo's three-page brief fails to make even a prima facie showing that this Court lacks personal jurisdiction over it in Colorado.  Sampo's primary argument is that threats "do not confer personal jurisdiction where a defendant's 'alleged threats [to sue customers] were not made to a Colorado resident.'" (Br. at 2.)  In the context of this dispute, this argument is meaningless.  Sampo did make its enforcement threat to a Colorado resident—Rally Software—after suing five of Rally's customers.

### D.     Sampo Is Subject To General Personal Jurisdiction In Colorado Through its Parent Corporation, Marathon Patent Group

Marathon Patent Group is subject to general personal jurisdiction in Colorado through its extensive contacts with the state and because it was incorporated under Colorado law until a year ago.

### 1. Marathon Patent Group's jurisdictional contacts impute to its subsidiary, Sampo IP LLC

The Federal Circuit long ago concluded that when a patent holding company is involved in a lawsuit and personal jurisdiction is challenged, the contacts of the parent company *and* its patent-holding subsidiary are both relevant to the analysis:[3]

> While a patent holding subsidiary is a legitimate creature and may provide certain business advantages, it cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction.

*Dainippon*, 142 F.3d at 1271. Just like the parent company in *Dainippon*, Marathon is tightly entwined with its subsidiary. Both companies treat the asserted patents as their own, and both are engaged in the exploitation of those patents. *See* II.C.3, above. The companies share the same headquarters, as well as the same President and CEO—Doug Croxall. *Id.* In fact, it was MPG's Mr. Croxall who signed the tunnel-vision declaration that Sampo filed in support of its motion, and which failed to acknowledge MPG's numerous Colorado contacts. (D.I. 15.) Thus, Sampo is subject to personal jurisdiction to the same degree as Marathon.

### 2. Marathon Patent Group is subject to general personal jurisdiction in Colorado

Until recently, MPG was a Colorado company incorporated under the laws of Colorado. *See* II.C.3, above. This alone should subject MPG to general personal jurisdiction here. *See Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2853-54 (2011). MPG is also subject to general personal jurisdiction because up until

---

[3] Although the parent company in *Dainippon* was subject to specific personal jurisdiction, the same rationale applies at least as strong here, where Sampo's parent is subject to general personal jurisdiction.

last year, its principal place of business was in Colorado, as evident from the website of the company's previous incarnation—ASMC. (Ex. 8.) (callout added):



In addition, MPG had multiple, "continuous and systematic general business contacts with Colorado" at least as early as 2011. (*See* Ex. 7; *see also Helicopteros*, 466 U.S. at 415-16.) MPG's incarnation as ASMC owned land in Colorado that it used for mineral extraction. (*See* II.C.3, above.) In November 2011, MPG entered into 20-year mining leases in several Colorado counties. *Id.* In 2012, ASMC was "engaged in…mining projects on the Colorado Plateau." (*Id.*) At least as recently as January 2013, MPG still owned mining claims in Colorado. *Id.* While there may be additional contact information outside of the public record, as the non-movant, any factual conflicts must be credited in Rally's favor.

### 3. Allowing MPG to hide behind Sampo is exactly what the Executive Branch has urged courts to prevent

Allowing MPG to hide its Colorado contacts behind Sampo would run contrary to recent judicial commentary and the President's executive actions aimed at ending problems with NPE suits. The Administration warned that "[p]atent trolls often set up

shell companies to hide their activities and enable their abusive litigation and extraction of settlements."  (Ex. 1; *see also* Ex. 2.)

### E. Venue is Proper in the District of Colorado, in which the Majority of Sampo's Actions Giving Rise to Rally's DJ Action Occurred

Under 28 U.S.C. § 1391(b), a civil action may be properly brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Thus, "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec*, 395 F.3d at 1280.  Because (as described above) most of the actions giving rise to Rally's declaratory judgment action occurred in Colorado, venue is proper here.

## V. CONCLUSION

For the foregoing reasons, Sampo's motion should be denied.


June 25, 2013                                                   **COOLEY LLP**

                                                                By:   *s/ Orion Armon*
                                                                      Orion Armon (#34923)
                                                                      oarmon@cooley.com
                                                                      Matthew Leary (#43610)
                                                                      mleary@cooley.com
                                                                      **Cooley LLP**
                                                                      380 Interlocken Crescent, Suite 900
                                                                      Broomfield, CO  80021-8023
                                                                      Telephone:       (720) 566-4000

                                                                      *Attorneys for Plaintiff RALLY SOFTWARE DEVELOPMENT CORP.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2013, I electronically filed the foregoing **RALLY'S OPPOSITION TO SAMPO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Orion Armon*

393457 v8/CO

16.